Matthew S. Blum  MBlum@BlumLG.com
**Blum Law Group**
108 W 39th Street, Suite 602
New York, New York  10018
*Attorneys for VIZIO Services, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

VIZIO Services, LLC, a Delaware Limited Liability Company,

                       Plaintiff,

    -against-

MediaMath, Inc., a Delaware corporation, with principal place of business 4 World Trade Center, New York, New York  10007,

                       Defendant.
----------------------------------------------------------------- X

Case No.: 20-cv-8119

**COMPLAINT**

Plaintiff VIZIO Services, LLC, a limited liability company organized under the laws of the State of Delaware ("**Vizio Services**"), by and through its attorneys Blum Law Group, submits its Complaint as against defendant MediaMath, Inc. ("**MediaMath**"), a Delaware corporation, herein alleging upon information and belief as follows:

## PARTIES AND RELATED ENTITES

1. Plaintiff Vizio Services is a single member limited liability company organized under the laws of the State of Delaware, with its principal place of business in Irvine, California.

2. Non-party VIZIO, Inc. ("**Vizio**") serves as the single member-owner of Vizio Services, Vizio incorporated under the laws of the State of California, with its principal place of business in Irvine, California.

3. Non-party Inscape Data, Inc. ("**Inscape**") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Irvine, California. Inscape is a wholly-owned subsidiary of Vizio.

4. Defendant MediaMath, Inc., is a corporation organized under the laws of the State of Delaware, registered to conduct business in New York with the New York Secretary of State, registered as an active Foreign Business Corporation, NY-DOS ID 3838275, with its principal place of business at 4 World Trade Center, New York, New York 10006.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), whereby the parties are citizens of different States as required to establish jurisdiction on the basis of diversity. Set forth more fully herein, MediaMath is a citizen of New York by way of its principal place of business, whereas Vizio Services is a dual citizen of Delaware (place of incorporation) and California (principal place of business).

6. Claims by Vizio Services exceed the minimum $75,000 jurisdictional threshold set forth by 28 U.S.C. § 1332(a), whereby damages incurred by Vizio Services exceed but are in no way less than Nine Hundred Thousand Dollars ($900,000.00).

7. The contract by and between Vizio Services and MediaMath, effective September 1, 2019 ("**Contract**") contains a choice of law provision designating the laws of New York to govern the contractual relationship between the parties.

8. Further, the Contract contains a forum selection provision, designating the United States District Court, Southern District of New York, as the appropriate forum to commence any action that may arise from, or relate to, the Contract.

9. This Court maintains *in personam* jurisdiction over MediaMath pursuant to NY-CPLR § 302(a) in that MediaMath regularly transacts business within the State, with its principal place of business located in New York, New York. Further, the Contract was executed in New York, New York, which constitutes sufficient minimum contact with the forum to establish *in personam* jurisdiction pursuant to NY-CPLR § 302. Upon statutory service of process, *in personam* jurisdiction over MediaMath by this Court is proper.

10. Pursuant to 28 U.S.C. § 1391(b), the United States District Court, Southern District of New York, is the appropriate venue, where this Southern District of New York is the judicial district in which MediaMath resides by way of its principal place of business in New York, New York (28 U.S.C. § 1391(c)(2)).

## FACTUAL ALLEGATIONS

**A.** **Background**

11. Among other things, Vizio is a global market leader in manufacturing, distribution, and sale of high performance, smart electronics.

12. Vizio electronics include a wide array of smart devices, from complete audio systems to smart televisions.

13. Vizio caters to non-business consumers while also providing comprehensive entertainment-oriented business solutions for corporate customers.

14. Inscape, a wholly-owned subsidiary of Vizio, functions to protect and house certain anonymized data lawfully collected from certain Vizio electronics ("**Data**").

15. Inscape is a leading provider of proprietary automatic content recognition (ACR[1]) technologies with cross-screen metric analyses, serving as the largest single-source of opt-in smart TV viewing data available for license.

16. Vizio Services obtained and owns certain rights to the Data, which Vizio Services, among other things, licenses to certain advertisers to facilitate digital marketing campaigns.

17. According to the MediaMath website, "MediaMath helps the world's top brands deliver personalized digital advertising across all connected touchpoints. Over 9,500 marketers in 42 countries use our enterprise software every day to launch, analyze, and optimize their

---

[1] https://www.gartner.com/en/information-technology/glossary/automatic-content-recognition-acr. Gartner Information Technology Glossary ("Automatic content recognition (ACR) refers to the ability of a client application (typically a smartphone or media tablet app) to identify a content element within its proximity _ audio, video or digital image _ based on sampling a portion of the audio or video (or image), processing the sample and comparing it with a source service that identifies content by its unique characteristics such as audio or video fingerprints or watermarks.")

digital advertising campaigns across display, native, mobile, video, audio, digital out of home, and advanced TV formats."[2]

**B.     Initial relations between the parties; pre-Contract Data samples**

18.     In the first quarter of 2018, MediaMath approached Vizio Services in pursuit of the opportunity to purchase certain Data to assist in MediaMath's digital advertising initiatives.

19.     Effective May 16, 2018, MediaMath signed a certain non-disclosure agreement, ("**NDA**"), covering the nature of the relationship by and between the parties, as well as the sum and substance of further business dealings between Vizio Services and MediaMath.

20.     After the NDA was executed, MediaMath decided to enter into a series of nine (9) short-term agreements performed over the course of nearly nineteen months, whereby MediaMath purchased license to use certain Vizio Data from Vizio Services (the nine short-term agreements, collectively, "**Supplements**,[3]" set forth more fully below).

21.     The Supplements were titled "Data Evaluation and Proof of Concept" supplements, serving as "supplements" to the NDA. Upon information and belief, MediaMath entered into the Supplements to evaluate the long-term benefit of purchasing license to use Vizio Data for MediaMath's digital marketing initiatives.

22.     Each Supplement was executed by and between the parties on a standardized Vizio Services-approved supplement form, such form version dated March 21, 2018 ("**Form**").

23.     The standardization of a Vizio Services Form has been essential to ensure that the Data is sufficiently protected in accordance with Vizio Services' standards and applicable law, and to ensure Vizio Services is sufficiently protected in its dealings with third-parties.

24.     Each standardized Vizio Services Form contains a number of key items, including but not limited to:

---

[2] https://www.mediamath.com/about/

[3] **Confidential Information.** The contents of the NDA, Supplements, Contract, and related documents thereto contain confidential and proprietary information, which is protected, uniquely-designed, and utilized by Vizio Services to keep Vizio Services a competitive market leader ("**Confidential Information**"). This Confidential Information includes but is not limited to pricing information, which shall be revealed in more detail pursuant to an appropriate seal and/or protective order issued by this Court.

        (i)       The contract term, as well as the method, frequency, and format of Data delivery from Vizio Services to the contracting company

        (ii)      Permissible Uses of the Data

        (iii)     Prohibited Uses of the Data; and

        (iv)     Vizio Services fee for Data delivery

25.     The Form further includes a disclaimer, in all-capitals:

> VIZIO PROVIDES THE DATA ON AN "AS IS" BASIS. VIZIO MAKES NO EXPRESS OR IMPLIED WARRANTIES REGARDING THE DATA, AND DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE. NO WARRANTY IS MADE THAT THE USE OF AND ACCESS TO THE DATA IS COMPLETE, USEFUL, ACCURATE, WILL BE ERROR FREE OR UNINTERRUPTED, OR THAT THE DATA WILL MEET COMPANY'S REQUIREMENTS.

26.     Lastly, the Form further requires that the contracting company generate and furnish certain reports to Vizio Services at various times, from which (among other things) the amounts due Vizio Services for delivered Data are computed. Using this standardized Form, the parties entered into the nine separate Supplements:

27.     On or about October 9, 2018, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 1", together with exhibits and schedules thereto (collectively, "**Supplement No. 1**").

28.     Upon the terms of this Supplement No. 1, MediaMath was furnished with samples of certain Vizio Data, delivered to MediaMath at proscribed times, from on or about June 1, 2018 to December 31, 2018.

29.     On or about October 9, 2018, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 2", together with exhibits and schedules thereto (collectively, "**Supplement No. 2**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about June 1, 2018 to December 31, 2018.

30. On or about April 4, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 3", together with exhibits and schedules thereto (collectively, "**Supplement No. 3**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about April 4, 2019 to December 31, 2019.

31. On or about March 28, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 4", together with exhibits and schedules thereto (collectively, "**Supplement No. 4**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about March 28, 2019 to May 26, 2019.

32. On or about April 19, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 5", together with exhibits and schedules thereto (collectively, "**Supplement No. 5**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about April 19, 2019 to June 30, 2019.

33. On or about April 23, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 6", together with exhibits and schedules thereto (collectively, "**Supplement No. 6**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about April 23, 2019 to June 30, 2019.

34. On or about May 1, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 7", together with exhibits and schedules thereto (collectively, "**Supplement No. 7**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about May 1, 2019 to June 30, 2019.

35. On or about May 16, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 8", together with

exhibits and schedules thereto (collectively, "**Supplement No. 8**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about May 16, 2019 to June 30, 2019.

36. On or about May 16, 2019, Vizio Services and MediaMath executed a Form supplement titled "Data Evaluation and Proof of Concept Supplement No. 9", together with exhibits and schedules thereto (collectively, "**Supplement No. 9**"), upon such terms which Vizio Services furnished MediaMath with certain Vizio Data samples at proscribed times, from on or about May 16, 2019 to June 30, 2019. [4]

37. Of import, MediaMath fully paid for the bargained-for delivery of Vizio Data, Vizio Services' Data delivery and MediaMath's payment performed in accordance with the Supplements, collectively which extended from June 1, 2018 through December 31, 2019.

**C.** **The Contract**

38. On or about September 10, 2019, Vizio Services and MediaMath entered into a Data Access Agreement, effective September 1, 2019 ("**DAA**"), and Use Case Addendum ("**UCA**"), dated September 10, 2019 (the DAA and UCA, together, with amendments, exhibits, and schedules thereto, collectively, the Contract, as defined above).

39. Like the Supplements, the Contract requires Vizio Services to furnish MediaMath with certain Vizio Data for the term starting September 1, 2019 through November 2020; a 15-month period ("**Term**").

40. The Contract provides MediaMath with a limited, non-exclusive, revocable, non-sublicensable, non-assignable, and non-transferable license, for the Term, to use certain Vizio Data in accordance with the terms and conditions set forth in the Contract.

---

[4] While Supplement Nos. 1-9 appear to have overlapping terms to deliver certain Vizio Data, it should be noted that Supplement Nos. 1-9 seek different types of Data. By way of an explanatory hypothetical example, Vizio Data may include the number of times an advertisement for Dell laptops was viewed in zip code 012345, over a period of time. Vizio Data may also include the number of times an advertisement for Bounty paper towels was viewed in zip code 012345, over a period of time. Supplement Nos. 1-9 regard Data for different advertisements.

41. For the Term, certain Vizio Data is to be delivered by Vizio Services to MediaMath in accordance with the Contract.

42. In consideration for delivery of certain Vizio Data, pursuant to Contract, ¶9, MediaMath is required to pay Vizio Services a minimum guaranteed payment ("**MG**") as proscribed within the Contract.

43. According to the Contract, MediaMath is required to make payments to Vizio Services over and above the MG as follows:

44. Pursuant to the Contract, MediaMath is required to furnish Vizio Services with certain reports at various times within the Term (like the Supplements). Such reports are required to include certain Confidential Information, including sensitive and confidential business metrics ("**Reports**"). Using the Confidential Information contained in the Reports, the parties are able to compute the bargained-for amounts due Vizio Services ("**Vizio Share**") based on confidential pricing equations set forth in the Contract.

45. Notwithstanding its Contractual obligations, MediaMath has failed and refused to pay anything under the Contract, despite Vizio Services' continued performance and delivery of Vizio Data.

46. To date, at no time has MediaMath made any objections, written or otherwise, to Vizio Services' performance under the Contract, including the format and method of Data delivery.

47. Notably, similar to the disclaimer in the Supplements, the Contract, at ¶14.5, titled "DISCLAIMERS" (in all capitals), states, again, in all-capitals:

> EXCEPT AS PROVIDED IN THIS AGREEMENT, VIZIO PROVIDES THE DATA ON AN "AS IS" BASIS. VIZIO MAKES NO EXPRESS OR IMPLIED WARRANTIES REGARDING THE DATA, AND DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE. NO WARRANTY IS MADE THAT THE USE AND ACCESS OF THE DATA WILL BE ERROR FREE OR UNINTERRUPTED, THAT ANY ERRORS OR DEFECTS IN THE DATA WILL BE CORRECTED, OR

THAT THE DATA WILL MEET COMPANY'S REQUIREMENTS.

48. To be clear, at no time did Vizio Services ever represent or warrant the fitness for certain merchantability or second-hand value of the Vizio Data to MediaMath. Such has always been within the exclusive province of MediaMath's business to determine whether the Vizio Data was worth the value sought by Vizio Services to provide the Vizio Data (as is). The Contract language speaks for itself.

49. And where MediaMath performed its due diligence in procuring samples of Vizio Data by way of the Supplements, for a period of nineteen months prior to entering into the Contract, there can be no surprise to MediaMath over Vizio Services deliverables, where MediaMath "tested the waters" long before choosing to agree to the terms of the Contract. Yet, MediaMath has failed to perform.

50. In sum, Vizio Services has performed all of its obligations under the Contract, furnishing MediaMath with the agreed upon Vizio Data in accordance with the terms of the Contract. In exchange, MediaMath has refused to pay _anything_ for the Vizio Data received and, instead, has repudiated payment of the Contract entirely.

51. In light of MediaMath's refusal to pay, on or about March 30, 2020, the parties executed an amendment to the UCA ("**UCA Amendment No. 1**"), which revised, in pertinent part, the equations used to compute the Vizio Share in a good faith attempt by Vizio Services to encourage MediaMath to perform its Contract obligations.

52. Despite engaging in good faith efforts to reduce MediaMath's payment, MediaMath has still failed and refused to pay anything under the Contract.

53. Notably, at no place in this UCA Amendment No. 1 did Vizio Services revise the MGs set forth in the Contract.

54. What's more, in or about May 2020, after failing to make the first two payments, on the eve of the third (missed) payment, MediaMath attempted to renegotiate the terms of the

Contract at drastically-reduced rates. In part, MediaMath's attempted renegotiation was designed to stretch out MediaMath's payments over longer periods of time.

55. Upon information and belief, MediaMath is seeking to sell MediaMath assets by way of a merger and/or asset purchase, which may result in the insolvency or dissolution of MediaMath.

56. Upon information and belief, a protracted payment schedule under the Contract permits MediaMath to dishonestly ameliorate its balance sheet, translating into a higher purchase price of MediaMath assets. By "dishonestly," MediaMath can continue to benefit from utilizing Vizio Data to increase MediaMath assets, all without paying (or delaying payment) for the Data.

57. Upon information and belief, as repeatedly expressed by way of its repudiation of payment under the Contract, and bad faith attempts to renegotiate Contract payment terms, MediaMath has no intention to make any payments under the Contract, despite continued performance by Vizio Services.

58. On or about July 2, 2020, Vizio Services furnished a notice via FedEx courier service, to MediaMath, clearly stating that MediaMath was in breach of the Contract for failing and refusing to pay ("**Breach Notice**"). The Breach Notice included Contract excerpt concerning the minimum guarantee payments to MediaMath agreed. In light of its repudiation, Vizio Services demanded immediate payment pursuant to the Contract and, further, that MediaMath (re)commit to abiding by the terms of the Contract.

59. In a letter dated August 3, 2020, MediaMath states, in pertinent part, that it will not make any further financial commitments to Vizio Services, despite continued performance (delivery of Vizio Data) by Vizio Services.

### FIRST CAUSE OF ACTION

*Breach of Contract*

60. Plaintiff repeats and reiterates the foregoing allegations as if fully set forth herein.

61. Plaintiff Vizio Services and defendant MediaMath entered into the Contract, on or about September 10, 2019.

62. Under the Contract, Vizio Services was required to deliver certain Vizio Data to MediaMath, such deliveries to take place at times in accordance with the Contract, for the Term.

63. In exchange for such deliveries, MediaMath was required to make payment to Vizio Services at specific times as explicitly proscribed within the Contract.

64. At all times, Vizio Services complied with its obligations under the Contract, and continues to deliver, to date, certain Vizio Data in accordance with the Contract.

65. To date, MediaMath has paid *nothing*.

66. MediaMath's failure and refusal to pay constitutes a material breach of the Contract.

67. Moreover, MediaMath has repudiated the prospect of MediaMath's further performance or adherence to the Contract terms, which requires MediaMath to make additional payments to Vizio Services for delivery of Vizio Data.

68. MediaMath's repudiation of the Contract terms, together with its failure and refusal to pay, constitutes a continuing material and fatal breach of the Contract.

69. As a result of MediaMath's failure and refusal to pay under the Contract, as well as its repudiation and refusal to abide by the Contract terms, Vizio Services has been damaged in the amounts due Vizio Services in accordance with the Contract.

70. In consideration of the foregoing, MediaMath is liable to Vizio Services for breach of contract in an amount to be determined at trial, but in no event less than Nine Hundred Thousand ($900,000) dollars.

## SECOND CAUSE OF ACTION

*Specific Performance – Accounting*

71. Plaintiff repeats and reiterates the foregoing allegations as if fully set forth herein.

72. The Contract, at ¶10, provides that Vizio Services is entitled to audit MediaMath during the Contract Term, and for a period extending three years thereafter, for the purpose of determining amounts due Vizio Services.

73. Performing an audit of MediaMath is necessary to determine the actual amounts due and owing Vizio Services, where the Monthly Vizio Share Computation amounts due Vizio Services are contingent on certain MediaMath gross revenues pertaining to the utilization of certain Vizio Data.

74. MediaMath is contractually required to assist Vizio Services by cooperating fully with such an audit. *See* Contract, ¶10.

**WHEREFORE**, Plaintiff has been damaged and demands judgment against Defendant, finding:

**As and for Plaintiff's First Cause of Action**, Defendant has breached the contractual agreement by and between the parties and is, therefore, liable to Plaintiff for amounts due and owing Plaintiff, in an amount to be determined at trial but in no event less than Nine Hundred Thousand ($900,000) dollars;

**As and for Plaintiff's Second Cause of Action**, Defendant is required to comply with its contractual obligations to permit, assist, and cooperate with a full audit of Defendant by Plaintiff to determine the full amounts due and owing Plaintiff under the Contract.

Dated: September 30, 2020
New York, New York

**Blum Law Group**

Matthew S. Blum, Esq. (MB-7366)
108 W 39th Street, Suite 602
New York, New York 10018
(917) 864-2959
MBlum@BlumLG.com
*Attorneys for Plaintiff*
*VIZIO Services, LLC*

TO: MediaMath, Inc.
4 World Trade Center,
New York, New York 10006